IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D SQUARED PLANT TRAPS LLC, | ) |
| Plaintiff, | ) Civil Action No. 23-cv-1907 |
| v. | ) |
| GUANGDONG BIXING TRADING CO., LTD. D/B/A NATURANOOK STORE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.   Introduction**

Pending before the court is an *ex-parte* motion for alternative service filed by D Squared Plant Traps LLC ("plaintiff" or "D Squared") (ECF No. 5). In its motion, D Squared asserts that defendant Guangdong Bixing Trading Co., LTD. D/B/A Naturanook Store ("defendant" or "Naturanook") is a Chinese business entity with an address in China and seeks authorization to serve defendant via email rather than via the Chinese Central Authority under the Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T 361, 658 U.N.T.S 163 (the "Convention"). D Squared argues that "service via e-mail is not an alternative method prohibited by international agreement [e.g., the Convention] and is a method reasonably calculated to give notice" to (ECF No. 5 at 4).  The question before the court is whether D Squared has shown that this is a situation in which the

Convention would permit service via a method other than service through China's Central Authority. The court concludes that D Squared has not met this burden, and the motion must be denied. The denial is without prejudice to D Squared being able to file a renewed motion if it is able to show the Convention permits the alternative service by email in the context of this case.

## II.     Factual and Procedural Background

On November 3, 2023, plaintiff filed a complaint against Naturanook alleging: (1) patent infringement; (2) federal trademark infringement pursuant to the Lanham act; (3) federal false designation of origin pursuant to the Lanham act; and (4) trademark infringement and unfair competition under Pennsylvania common law. (ECF No. 1). On January 9, 2024, plaintiff filed an amended complaint alleging: (1) utility patent infringement; (2) design patent infringement; (3) federal trademark infringement; (4) unfair competition and federal false designation of origin; and (5) unfair competition under Pennsylvania common law (ECF No. 4.) In its amended complaint, plaintiff asserts the conclusion that "Naturanook's actions have caused and are causing irreparable harm to [plaintiff]." (ECF No. 4 at ¶ 109). On January 9, 2024, plaintiff filed an *ex parte* motion for alternative service (ECF No. 5) and a brief in support of that motion (ECF No. 6). Plaintiff seeks to invoke Federal Rule of Civil Procedure 4(f)(3) so that it may serve defendant, a Chinese business entity doing business in the United States via online marketplaces, via email. (ECF No. 5). Rather than showing a basis for alternative service under the Convention, plaintiff, instead, argues the Convention "does not preclude this Court from authorizing service of process by e-mail or electronic submission[]" because "[a]lternative means of service, such as e-mail or electronic submission *are not prohibited* by the Hague Service Convention *where a signatory nation has not expressly objected to those means*." (ECF No. 6 at 10) (emphasis added).

2

### III.     Legal Standard

Federal Rule of Civil Procedure 4(h) defines the approved methods of service of process on corporations, partnerships, and associations. Fed. R. Civ. P. 4(h). Under Rule 4(h)(2), plaintiffs may serve foreign corporate entities in accordance with the methods outlined in Rule 4(f), except for personal delivery. Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides 3 avenues for service outside the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>(B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>(C) unless prohibited by the foreign country's law, by:
>>(i) delivering a copy of the summons and of the complaint to the individual personally; or
>>(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3)  by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

As the Advisory Committee Notes to Rule 4(f) make clear: "Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." This note is consistent with the Supreme Court's interpretation that "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). To be in compliance, "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017).

3

**IV.    Discussion**

As the Supreme Court has recognized, the purpose of the Convention was to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash*, 581 U.S. at 273. This purpose was accomplished by requiring that parties to the treaty establish a central authority responsible for effectuating service of documents from the other parties to the treaty. *Schlunk*, 486 U.S. at 698. After a central authority receives a proper request, "it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Id.* at 699.[1] Unless the receiving country has objected, the Convention permits alternative methods to effectuate service, such as "service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'" *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020) (summarizing 20 U.S.T. 361, Arts. 8–10).[2] Here, China has objected, and those specific forms of service would not be permitted under the Convention. The Convention does not interfere with a country's internal laws allowing

---

[1] A central authority, generally, may not refuse to effectuate service. 20 U.S.T. 361, Art. 13; *see also Facebook,* 480 F. Supp. 3d at 986. If a plaintiff properly serves a defendant under the Convention and no certificate of service has been issued after at least 6 months, then the court may enter default judgment for the plaintiff. 20 U.S.T. 361, Art. 15.

[2] Of particular relevance here is that China has objected to service by postal channels. *Facebook,* 480 F. Supp. 3d at 980. Whether a country has objected to service via postal channels is relevant because some courts that have authorized service via email under the Convention have analogized service via email with service by postal channels. *See, e.g.*, *Aquapaw Brands LLC v. Yan-Peng*, No. 2:21-CV-01784, 2023 WL 3538551, at *2 (W.D. Pa. May 18, 2023) (authorizing service via email on a defendant in Hong Kong where Hong Kong was a party to the Convention and had not objected to service via postal channels). Some courts have refused to authorize service via email when the receiving country has objected to service via postal channels. *See e.g.*, *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co., Inc.*, No. CV 19-608, 2019 WL 7049504, at *4 (W.D. Pa. Dec. 23, 2019) (refusing to authorize service via email on a defendant in Turkey where Turkey was a party to the Convention and had objected to service via postal channels); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. May 24, 2019) (refusing to authorize service via email on a defendant in China where China was a party to the Convention and had objected to service via postal channels).

for other methods of service, or with 2 or more countries agreeing to alternative methods. 20 U.S.T. 361, Arts. 11, 19.

There are situations in which service other than via the central authority may be allowable under the Convention. As a preliminary matter, the Convention does not apply "where the address of the person to be served . . . is not known." 20 U.S.T. 361, Art. 1. The Convention does not apply where a plaintiff makes valid service under both "state law and the Due Process Clause" on a domestic agent of the foreign party. *Schlunk*, 486 U.S. at 707. "[I]n case[s] of urgency," the Convention permits courts, "to issue 'any provisional or protective measures.'" 20 U.S.T. 361, Art. 15. Those "provisional or protective measures" include alternative methods of service.[3]

Despite the Supreme Court's direction, some courts have authorized alternative means of service, specifically email service, under Rule 4(f)(3) even in situations where the Convention would require service via a central authority. *See e.g.*, *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896, 2017 WL 4536417, at *1 (N.D. Cal. Oct. 11, 2017). In *Microsoft*, and many of the other decisions that have authorized email service, the district court relied on an overly broad reading of a decision from the Court of Appeals for the Ninth Circuit—*Rio Properties, Inc, v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002). While it is true that the court in *Rio Properties* concluded that "court-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1) or Rule 4(f)(2)," *Rio Properties,* 284 F.3d at 1015, that quoted conclusion contains a footnote that is oft overlooked by the courts that have relied on it to allow service of process via email. In that overlooked footnote, the court of appeals recognized: "A federal court

---

[3] *See* Fed. R. Civ. P. 4 advisory committee's note ("The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances.").

5

would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory." *Id.* at 1015 n.4. Contrary to plaintiff's interpretation of *Rio Properties* that "Rule 4(f) does not create a hierarchy of preferred methods of service of process,'" (ECF No. 6 at 9) that proposition only holds true when the Convention is not applicable.

As previously discussed, China is a party to the Convention. Plaintiff, therefore, must comply with service via a central authority unless the Convention permits an alternative form of service. *See Schlunk*, 486 U.S. at 705.

The court notes: (1) plaintiff acknowledges it has not attempted service through China's Central Authority; (2) China has objected, among other things, to service via postal channels; and (3) plaintiff has knowledge of defendant's address. Under these circumstances, the Convention is applicable, and the alternative service methods included in Article 10 of the Convention are precluded because China has objected to those forms of service.

This court understands that the only remaining situation in which the Convention would permit alternative service is if this case were a "case of urgency." The Convention, however, is silent as to what constitutes a "case of urgency." In one unique case, a district court reasoned that suffering irreparable harm could constitute a case of urgency. *Lonati, S.p.A. v. Soxnet, Inc.*, No. CV 20-5539, 2021 WL 9839476, at *3 (C.D. Cal. Sept. 20, 2021). In *Lonati*, the plaintiffs had actually attempted service through China's Central Authority, but they had not received a certificate of service within 6 months. *Id.* The court was reluctant to grant a default judgment "without any indication of actual notice." *Id.* After considering the attempted service through China's Central Authority and reviewing the factual basis about the impact of the defendants'

ongoing and continuous infringing conduct on the plaintiffs' business, the court determined that plaintiffs were suffering irreparable harm. *Id.* Having determined that plaintiffs were suffering irreparable harm, the court found that "Plaintiffs fall within the urgency exception of Article 15 of the Hague Convention." *Id.*

Here, D Squared, in a conclusory manner, asserts it is suffering from irreparable harm as a result of Naturanook's alleged ongoing and continuous infringing conduct. (ECF No. 4 at ¶¶ 109–113). In the context of a request for injunctive relief, courts have recognized that "'conclusory statements and theoretical arguments' are not enough to show irreparable harm." *Jacki Easlick, LLC v. CJ Emerald*, No. 2:23-CV-2000, 2024 WL 310125, at *8 (W.D. Pa. Jan. 26, 2024) (quoting *Apple, Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012). In this context, likewise, the court cannot determine from the existing record that plaintiff is suffering an urgent situation, such as plaintiff suffering irreparable harm. It will be necessary for plaintiff to show it suffers from irreparable harm and not merely to make conclusory statements. Plaintiff, if it chooses to file a renewed motion, must show that the Convention's urgency exception to service via a central authority, or some other exception, applies, permitting alternative service under Rule 4(f)(3).

## V.   Conclusion

Being that China is a party to the Convention and has objected, among other things, to service via postal channels, service via the central authority would be required. In order to bypass service through China's Central Authority, D Squared must show that this case falls within an exception under the Convention that would authorize an alternative form of service. Here there was no showing an exception applied, and the motion for alternative service must be denied

without prejudice. D Squared may file a renewed motion to show that there is a factual basis for this court to find an alternative form of service would be permitted under the Convention, such as under the urgency exception.


February 8, 2024                    /s/ Joy Flowers Conti
                                    Joy Flowers Conti
                                    Senior United States District Judge